**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ZACHARIAH N. DETTY,**

    **Plaintiff,**

   v.

                       **Civil Action 2:19-cv-4366
                       Judge Edmund A. Sargus, Jr.
                       Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Zachariah N. Detty, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 17), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 10).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

                       **I.    BACKGROUND**

Plaintiff filed his applications for disability insurance benefits and for supplemental security income in August 2015, alleging that he has been disabled since October 31, 2014, due

to Sub Cutaneous Lupus, degenerative disc and joint disease, vasculitis, and anxiety. (R. at 437-53, 473.) Plaintiff's applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 367-68.) Administrative Law Judge Jeannine Lesperance ("ALJ") held a video hearing on August 17, 2018, at which Plaintiff, represented by counsel, appeared and testified. (R. at 208-58.) On September 19, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 175–89.) On July 29, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–7.) Plaintiff then timely commenced the instant action. This matter is properly before this Court for review.

## II. HEARING TESTIMONY

Plaintiff testified at the administrative hearing on August 17, 2018, that he lived with his wife and two minor children. (R. at 214.) He confirmed that he has a driver's license but only drives "[m]aybe twice a month." (R. at 215.) He noted that his "rheumatologist was shocked that [he] drove at all," given his medications and the accompanying "lupus fog" he can suffer. (R. at 233.)

When asked what prevented him from working full-time, Plaintiff responded that he "can't concentrate." (R. at 224-25.) He testified that he tries to read, but is unable to retain much information. (R. at 225, 233) He further testified that the joints in his hands, arms shoulders, knees and "back [are] really bad, from top to bottom." (R. at 225.) At the time of the hearing, Plaintiff reported that he was treating with a rheumatologist who placed him on medication which was helping improve the lesions on his chest and arms. (R. at 230.)

Plaintiff estimated that he could sit or stand for approximately 20-30 minutes at one time.  (R. at 227.)  He testified to trouble concentrating and severe mood swings.  (*Id.*)  Further, Plaintiff testified that pain and numbness cause fatigue even when he is completing simple activities, such as cooking dinner.  (*Id.*)  He also stated that, although he does some "light housework," his daughter has taken over dusting, vacuuming and mopping.  (R. at 228.)

Plaintiff stated that he has sensitivity to light and he feels "really nauseous" and "overall fatigue."  (R. at 229.)  Accordingly, he wears protective clothing when he is out in the sun and waits until the sun goes down to mow with a riding mower.   (R. at 229, 234.)

According to Plaintiff, his wife handles most of the grocery shopping, because he finds it difficult to walk through the store.  (R. at 234.)  He recently used a motorized scooter for the first time while school shopping with his children because he was unable to walk around the store anymore.   (R. at 234-35.)

When asked if he had any hobbies, Plaintiff replied that he used to enjoy fishing, hunting, and hiking, but "[i]t's been years" since he had engaged in those activities.  (R. at 236.)  Further, he testified that his wife handled the checkbook and paid the bills.  (*Id*.)  Finally, in response to questions from the ALJ regarding his recent surgery for carpal tunnel release and left trigger finger, Plaintiff stated that the surgery had helped.  (R. at 236-237.)

### III. MEDICAL RECORDS AND OPINION[1]

#### A. James Tanley, Ph.D.

Dr. Tanley evaluated Plaintiff on October 2, 2015, for disability purposes. (R. at 624-28.) Plaintiff complained that he suffered from lupus. He reported that he continues feeling worse, his hands shake, he can't focus, and he loses his train of thought. (R. at 624.) He also reported that his appetite was not good but that he was sleeping better. (*Id.*) When asked about social relations, Plaintiff responded that he can "do alright with people or just be aggravated all day." (R. at 625.) He reported no drug/alcohol use or mental health treatment history but explained that he dealt with previous job stress by taking Xanax. (*Id.*) When asked about his then current emotional status, Plaintiff responded, "I'll start feeling really hot, feels like I'm goin' 100 miles an hour. Everything tightens up. I'll feel pissed for no reason. The medicine helps for the most part. I'm embarrassed daily. I'm frustrated. I feel drained." (R. at 625.)

Plaintiff also reported feeling guilty because his wife works and he does the household chores. (R. at 625.) He grocery shops with food stamps but very seldom. (*Id.*) With respect to other activities, Plaintiff reported being involved with church, watching TV, and listening to the car radio. (*Id.*) He explained that he cannot focus his attention to read. (*Id.*) He cried during the evaluation. (*Id.*) During the mental status examination, Plaintiff was generally cooperative, with normal speech and thought content. (*Id.*) His mood was appropriate and eye contact was good. He described experiencing a low energy level and mood problems. (R. at 626.) Based on

---

[1] Plaintiff alleges disability in part because of his physical impairments. The medical records indicate that Plaintiff has received treatment for various conditions. The ALJ assigned exertional limitations due to these conditions. Plaintiff's Statement of Errors, however, focuses primarily on Plaintiff's mental impairments and limitations. Accordingly, the Court will confine its review to the medical evidence addressed to Plaintiff's mental impairments and limitations.

all of the foregoing, Dr. Tanley assessed Plaintiff with an adjustment disorder with mixed anxiety and depressed mood, chronic. (R. at 627.)

When discussing Plaintiff's work abilities, Dr. Tanley noted that Plaintiff appears unable to manage personal funds. Dr. Tanley estimated Plaintiff's intellect to be in the average range. (R. at 627-28.) Accordingly, Dr. Tanley expected Plaintiff to show little or no difficulty with tasks of increasing complexity and multistep tasks. (*Id.* at 628.) Dr. Tanley felt, however, that were Plaintiff to experience worsening mood problems, guilt feelings, diminished energy, and/or anxiety problems, his ability to focus and concentrate would diminish. (*Id.*) Dr. Tanley further opined that Plaintiff's current problems "could make the free and easy commerce of social interaction more problematic at this time" and "lower his frustration tolerance and put him somewhat at risk for the pressures of work at this time." (*Id.*)

**B.     Rodney Swearingen, Ph.D.**

Dr. Swearingen evaluated Plaintiff on April 20, 2016, for disability purposes. (R. at 814-18.) Plaintiff reported that he was seeking benefits due to Lupus, Sjogren's, Fibromyalgia, and mood swings. (R. at 814.) When discussing his history, Plaintiff reported some physical abuse as a child. (*Id.*) He also noted that he had attended college but did not obtain a degree due to his wife's health. (*Id.*) Further, Plaintiff stated that he was fired from his last job for lack of performance. (R. at 815.) Plaintiff also reported that he was distracted and had to re-read things but was better with hands on learning. (*Id.*) Upon examination of Plaintiff's mental status, Dr. Swearingen noted that Plaintiff's face was red and his hands appeared shiny. (*(Id.)* Plaintiff was alert and oriented, exhibited good eye contact, normal speech and thought and his affect was

cooperative. (*Id.*) Plaintiff reported feeling depressed and guilty with frequent crying spells. (R. at 816.) Plaintiff further reported experiencing daily panic attacks and stated that he avoided the public. (*Id.*) Plaintiff exhibited deficits in his memory and only fair concentration. (*Id.*) Plaintiff was unable to recall any of the words presented during the delayed recall test, and Dr. Swearingen found Plaintiff's immediate recall skills to be below average. (*Id.*) Dr. Swearingen diagnosed Plaintiff with PTSD, a general anxiety disorder, and a depressive disorder due to another medical condition with depressed features. (R. at 817.)

When discussing Plaintiff's mental work abilities, Dr. Swearingen noted that Plaintiff had difficulty following directions during the examination and had problems in the past with work situations including memory issues. (R. at 817.) He further noted that Plaintiff had to re-read things as he was a better hands-on learner. (*Id.*) Dr. Swearingen reported that Plaintiff had problems with numbers during the examination. (*Id.*) Plaintiff reported past situations where he was easily distracted and could only do one task at a time. (*Id.*) Dr. Swearingen noted Plaintiff's history of "disrupted interpersonal relationships" including family and supervisors. (*Id.*) Dr. Swearingen also found that Plaintiff had difficulties with maladaptive responses to workplace stress in the past, and opined that the little things at work were hard for him. (R. at 818.)

  **C. State Agency Review**

State agency psychologist, Aracelis Rivera, Psy.D. reviewed Plaintiff's file on October 24, 2015 and found that Plaintiff had moderate restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; and no difficulties in maintaining

6

concentration, persistence and pace or episodes of decompensation. (R. at 268.) Dr. Rivera found that Plaintiff's statements were fully credible and consistent with the objective findings from his examination. (R. at 269.) Dr. Rivera concluded that Plaintiff could have occasional and superficial contact with the general public, supervisors, and coworkers; and would able to tolerate low stress and fairly static work. (*Id.*) However, changes in routine would need to be explained. (R. at 272-73.)

 State agency psychologist, Patricia Kirwin, Ph.D., reviewed Plaintiff's file at the reconsideration level on May 6, 2016 and found that Plaintiff had moderate restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence and pace. (R. at 308.) Unlike Dr. Rivera, Dr. Kirwin found Plaintiff's statements regarding his psychological conditions and their effect on his functioning only partially consistent. (*Id.*) Dr. Kirwin noted that there were some discrepancies between Plaintiff's consultative examination presentations from October 2015 and July 2016. (*Id.*) For example, at his evaluation with Dr. Swearingen, Plaintiff "endorsed multiple PTSD, OCD symptoms and reported visions of his deceased grandmother. However, none of this was reported or noted at the previous evaluation [with Dr. Tanley]." (R. at 309.) Dr. Kirwin concluded that Plaintiff was capable of 1-to-3 step tasks in a routine work environment but that he was better with hands on learning. Dr. Kirwin recommended no high pace or high production settings. (R. at 313-14.) Dr. Kirwin agreed with Dr. Rivera that Plaintiff could have occasional and superficial contact with the general public, supervisors, and coworkers. (R. at 314.)

## IV. ADMINISTRATIVE DECISION

On September 19, 2018, the ALJ issued her decision. (R. at 175-89.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. (R. at 177.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since October 31, 2014, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of cutaneous lupus erythematosus, fibromyalgia, degenerative disc disease, left carpal tunnel syndrome, status post release, trigger finger of the left middle finger, status post release, left lateral epicondylitis, osteoarthritis of the right knee, obesity, depressive disorder, anxiety disorder, somatoform disorder, and post-traumatic stress disorder. (*Id.*) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 179.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except this individual is limited to standing and/or walking 4 hours in an 8-hour day, for up to 1 hour at a time. He can occasionally balance, stoop, kneel, crouch, and crawl. He can occasionally climb ramps and stairs, and push/pull or operate foot controls with his lower extremities. He can frequently handle, finger, and feel bilaterally. He should never climb ladders, ropes, or scaffolds, and he should never be exposed to extreme heat or hazards, such as unprotected heights or proximity to moving mechanical parts. He must work indoors. He is able to perform simple, routine tasks at an average pace without strict time or production demands. He can have occasional interaction with others on matters limited to the straightforward exchange of information without negotiation, persuasion, or conflict resolution. He can adapt to occasional changes in the work setting that are explained or demonstrated.

(R. at 182.)

Relying on the VE's testimony, the ALJ found that Plaintiff's limitations precluded his ability to perform his past relevant work as a cashier/sales attendant, box printer, construction worker, and farm worker. (R. at 187.) The ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 188.) She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since October 31, 2014, the alleged onset date. (*Id.*)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff sets forth one contention of error: That the ALJ failed to properly evaluate the mental health evidence of record. (EFC Nos. 13 and 18.) By extension, Plaintiff asserts that the

ALJ erred by not incorporating relevant mental limitations in the RFC determination, resulting in a deficient RFC that does not adequately address Plaintiff's limitations. (ECF No. 13, at p. 13 "The ALJ improperly evaluated each and every opinion leading to a residual functional capacity that is inconsistent with the evidence of record." *see also* ECF No. 18, at p. 2 "The crux of Mr. Detty's argument is that the ALJ failed to properly account for the limitations opined by every mental health source of record.")

### A. The ALJ's Evaluation of the Mental Health Opinions

In evaluating a claimant's case, the ALJ must consider all medical opinions that she or he receives. 20 C.F.R. § 416.927(c). Medical opinions include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Here, Drs. Swearingen and Tanley, as examining sources, both qualify as a nontreating source. *See Smith v. Comm'r of Social Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) ("A 'nontreating source' (but examining source) has examined the [plaintiff] 'but does not have, or did not have, an ongoing treatment relationship with' her.") (citing 20 C.F.R. § 404.1502.) Although an examining source's opinion generally is entitled to greater weight than the opinion of a non-examining source, 20 C.F.R. § 416.927(c)(1), an ALJ may reject an opinion if it is inconsistent with the record evidence. 20 C.F.R. § 416.927(c)(4); *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010). Dr. Kirwin, on the other hand, is a state agency consultant. An ALJ "must explain in the decision the weight given the opinions of a State

Agency medical '. . . consultant[,]" 20 C.F.R. § 404.2527(e)(2)(ii), but need not give "an exhaustive factor-by-factor analysis" of her or his decision. *Cf. Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citations omitted).

Further, although "an opinion from a medical source who has examined a claimant is [generally] given more weight than that from a source who has not performed an examination," ALJs have more discretion in considering non-treating source opinions. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013). Significantly, they are not required to give "good reasons" for discounting non-treating source opinions. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016).

1. **Dr. Tanley**

The ALJ considered Dr. Tanley's opinion and assigned it "partial" weight, reasoning as follows:

> In regard to the opinion of Dr. Tanley at 4F, I accept his diagnosis of adjustment disorder with mixed anxiety and depressed mood, but find the claimant to be more limited than suggested by this psychologist. Dr. Tanley opined that the claimant would have no limitations in his ability to understand, remember and carry out instructions, nor any limitations in his ability to maintain attention, concentration or maintain persistence and pace. (4F/4, 4F/5). The record indicates ongoing issues with depression and anxiety, as well as subjective reports of memory issues that warrant limiting the claimant more than found in this opinion. Overall, partial weight is given to Dr. Tanley's report.

(R. at 186.)

Plaintiff's argument that the ALJ failed to properly evaluate Dr. Tanley's medical opinion is not particularly well-developed. Rather, the crux of Plaintiff's argument as it relates to Dr. Tanley appears to be that the ALJ failed to properly account for Dr. Tanley's opined

limitations in the RFC. (ECF No. 13, at p. 12.) In so arguing, Plaintiff recognizes, however, that the ALJ concluded Dr. Tanley's recommended limitations were not restrictive enough. Absent any meaningful discussion, Plaintiff has waived any argument addressed specifically to the ALJ's evaluation of this opinion. On the other hand, his arguments regarding the ALJ's failure to account for the Dr. Tanley's opined limitations in the RFC will be addressed below. *See Cook v. Comm'r of Soc. Sec.,* No. 2:19-CV-4438, 2020 WL 3424502, at *6 (S.D. Ohio June 23, 2020) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to '. . . put flesh on its bones.")).

### 2. Dr. Swearingen

The ALJ also assigned partial weight to the opinion of Dr. Swearingen, stating,

> I have also reviewed and considered the opinion of Dr. Swearingen at 24F. Again, I accept the diagnoses found by the consultative examiner, but only afford partial weight to his opinion. Specifically, Dr. Swearingen does not offer his own opinion regarding the claimant's mental residual functional capacity, but simple recites the claimant's statements regarding his history and difficulties (24F/5). Even so, Dr. Swearingen noted that the claimant had deficits in his memory and he only had fair concentration [ ]. To the extent that I have found moderate limitations in the B criteria supported, partial weight is given to this opinion. I find that more restrict mental limitations are not supported by the evidence of record, specifically based upon the fairly conservative treatment with a primary care physician, and the claimant's noncompliance with taking his medications and failure to seek recommended treatment.

(R. at 186.)

Plaintiff argues that the ALJ erred in discounting Dr. Swearingen's opinion because she concluded that it relied too heavily on Plaintiff's own reporting. The Undersigned disagrees and

13

finds that the ALJ properly discounted Dr. Swearingen's opinion. The ALJ properly afforded only partial weight to the opinion and the decision is supported by substantial evidence. Indeed, the Court of Appeals for the Sixth Circuit has upheld an ALJ's assignment of less weight to a consultative examiner's opinion when it was based on the claimant's subjective reporting of symptoms, and not supported by other objective evidence. *Hobbs v. Berryhill*, No. 3:17-CV-00095-DCP, 2019 WL 1332370, at *5 (E.D. Tenn. Mar. 25, 2019) (citing *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017)). In *Staymate*, the Sixth Circuit confirmed that "'[w]e have previously found reasoning that a medical opinion relied too heavily on the claimant's subjective complaints as adequate to support an ALJ's decision to give little weight to the opinion.'" *Id.* Moreover, the Sixth Circuit has rejected the specific argument that Plaintiff puts forth here, namely that the unique nature of a mental health evaluation requires a different analysis or conclusion. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th Cir. 2016) ("Regardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and repackage it as an opinion.").

Here, the ALJ also properly found that Dr. Swearingen's opinion was not supported by objective medical evidence. Substantial evidence supports this conclusion. For instance, as the ALJ noted, Plaintiff's mental health treatment was "fairly conservative" and undertaken by a primary care physician (as opposed to a mental health professional). Further, the ALJ also noted the Plaintiff's well-documented non-compliance with his medications and his decision not to pursue recommended treatment. Plaintiff has not identified any evidence to the contrary. For

these reasons, the Court finds that the ALJ did not err in her consideration of Dr. Swearingen's opinion.

2. **State Agency Psychologists**

Plaintiff also faults the manner in which the ALJ evaluated the state agency psychiatrists' opinions. The ALJ assigned "partial" weight to the opinions of the state agency psychological consultants, reasoning as follows:

> I limited the claimant to simple, routine tasks, but did not find support in the medical record for the further restrictions to only 1-3 step tasks, as I find the record supports his ability to perform unskilled work and almost any task can be subdivided into many steps, such that the number of steps does not have any clear meaning (1A, 3A, 5A, 7A). I also did not adopt the requirement that the claimant should be provided "hands on learning," because the objective record similarly did not support this specific limitation, but instead provided a restriction to jobs that have only limited changes that can be explained or demonstrated. I have also adopted the limitations regarding no fast pace and positions with no strict time or production demands, as well as the social limitations. However, I did not use the undefined term of "superficial," but instead described the specific types of social interaction that the claimant can engage in, and should also be precluded from – specifically negotiation, persuasion and conflict resolution. This further should reduce work stressors.

(R. at 186.)

Although referring to the ALJ's assessment of these opinions generally, Plaintiff takes specific issue only with the ALJ's consideration of Dr. Kirwin's opinion offered at the reconsideration level. (ECF No. 13, at p. 9 ("the state agency psychologist at the reconsideration level"). Plaintiff's focus appears limited to the ALJ's failure to adopt two specific limitations: (1) 1-3 step tasks and (2) "hands on learning." (R. at 337.) (ECF No. 13, at p. 10.) Plaintiff acknowledges that "[t]he ALJ essentially adopted the rest of the opined limitations." (*Id.*) As with Dr. Tanley's opinion, however, Plaintiff is not challenging the ALJ's evaluation of Dr.

15

Kirwin's opinion as much as he is objecting to the ALJ's decision to omit specifically identified limitations from the RFC. Accordingly, Plaintiff also has waived any argument addressed to the ALJ's evaluation of this opinion and, as noted, his arguments regarding the RFC will be addressed below. *See Cook,* 2020 WL 3424502, at *6.

In sum, substantial evidence supports the ALJ's assessments of the opinion of Dr. Kirwin. Plaintiff, relying solely on argument, has provided no record evidence to the contrary. Moreover, the Court would be required to defer to the findings at issue here even if Plaintiff had identified substantial evidence supporting an opposite conclusion. *Blakley*, 581 F.3d at 406; *cf. Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013) ("The ALJ retains a 'zone of choice' in deciding whether to credit conflicting evidence."). For these reasons, the undersigned finds that the ALJ did not err in her consideration of the mental health evidence of record.

### B. RFC

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v.*

16

*Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted)

As applied here, the fact that the ALJ did not incorporate all of the restrictions noted by Drs. Swearingen and Tanley is not legal error in and of itself. *White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio Sept. 10, 2013) (noting that the ALJ's decision not to incorporate all of the State agency examining physician's restrictions, despite attributing significant weight to his opinion, was "not legal error in and of itself"). "While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner." *Id.* (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004)). Indeed, "there is no legal requirement for an ALJ to explain each limitation or restriction he [or

she] adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio March 19, 2013) (citing *Ford*, 114 F. App'x at 198). Similarly, the ALJ was not required to include any restrictions noted by Dr. Kirwin. An ALJ simply is not required to include restrictions in the RFC that the ALJ did not accept. *See Hall v. Comm'r of Soc. Sec.*, No. 1:17-CV-363, 2018 WL 3524467, at *4 (S.D. Ohio July 23, 2018), *report and recommendation adopted*, No. 1:17-CV-363, 2018 WL 4031060 (S.D. Ohio Aug. 23, 2018) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Moreover, the ALJ explained why she was rejecting certain limitations identified by Dr. Kirwin as well as why and how she was incorporating the limitations for which she found support. According to the ALJ, a limitation to 1-3 step tasks was encompassed by a limitation to simple, routine tasks. (R. a 186.)  Further, the ALJ noted that a restriction to "hands on learning" was not supported by the objective record and thus she did not incorporate any restrictions in this regard. (*Id.*)  Nevertheless, she provided a restriction to jobs with only limited changes that could be explained or demonstrated. (*Id.*)  Consequently, Plaintiff's argument that the ALJ dismissed these opined limitations as "trivial or meaningless" (ECF No. 13, at p. 11) is wholly inconsistent with a fair reading of the ALJ's decision. Simply stated, the ALJ was not required to adopt Dr. Kirwin's opinions verbatim, including every limitation he proffered. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (holding an ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 276 (6th Cir.

2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). Finally, in arguing form over substance, Plaintiff does not explain how the restrictions adopted by the ALJ fail to adequately address his limitations.

In short, the ALJ's mental RFC determination accounted for Plaintiff's mental limitations. While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for her determination, which enjoys substantial support in the record. *Schmiedebusch*, 536 F. App'x 637, 649 (6th Cir. 2013) ; *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.").

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding thatdefendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: November 9, 2020**               /s/ *Elizabeth A. Preston Deavers*
                                         **Elizabeth A. Preston Deavers**
                                         **Chief United States Magistrate Judge**